UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL THOMPKINS,

        Plaintiff,

v.

S. NORTON et al.,

        Defendants.

Case No. 1:06-cv-97

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I. Factual allegations

Plaintiff is incarcerated in the Oaks Correctional Facility (ECF). In his *pro se* complaint, he sues the following ECF employees: Warden C. Curtin, Assistant Deputy Warden D. Pratt, Resident Unit Manager A. Brown, First Shift Sergeant S. Norton and First Shift Control Center Supervisor R. Winn.

Plaintiff's complaint concerns his classification to administrative segregation.[1] On November 6, 2005, Defendant Norton issued a "Notice of Intent" to classify Plaintiff to segregation. According to the notice, Norton found deep scrape marks under the edge of the lower concrete bunk in Plaintiff's cell, which was located in two block. Norton believed the scrapes were made while fashioning a weapon. A sharpened rod was found in an empty cell in two block. Prison officials believed that the metal rod was taken from a typewriter in five block that was reported missing on November 1, 2005. At that time, Petitioner was employed as a unit porter in five block. Following a hearing held on November 16, 2005, the hearing officer concluded that Plaintiff posed a serious threat to the physical safety of staff or others at the facility and reclassified him to administrative segregation.

Plaintiff denies any wrongdoing and claims that he was classified to administrative segregation in violation of his due process rights. For relief, he seeks compensatory damages of $20,000 and punitive damages of $10,000 from each of the Defendants.

---

[1] The Michigan Department of Corrections has the following security classifications, from least to most secure: Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ B (effective Mar. 1, 2004). There are various types of segregation, including administrative segregation and detention. Administrative segregation is the most restrictive and is imposed for institutional security, e.g., when a prisoner poses a serious threat to the physical safety of staff or other prisoners. MICH. DEP'T OF CORR., Policy Directive 04.05.120, ¶ J (effective Feb. 14, 2004).

II. <u>Exhaustion of Administrative Remedies</u>

Plaintiff has failed sufficiently to allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.[2] *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). In addition, a prisoner must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003).

---

[2]To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. LCIVR 5.6(a). Plaintiff has chosen to forego use of the form complaint in this action.

The Michigan Department of Corrections provides a three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement") (effective 12/19/03). On November 30, 2005, Plaintiff filed a Step I grievance disputing his classification to administrative segregation. He claimed that he was not provided with an adequate opportunity to be heard on the matter and that there was not sufficient evidence to support his classification. Plaintiff appealed his grievance to Step III. He named Defendant Pratt in the Step I grievance, but failed to mention any of the remaining Defendants. Plaintiff, therefore, failed to exhaust his claims against Defendants Norton, Winn, Brown and Curtin. *See Curry*, 249 F.3d at 505; *Thomas* 337 F.3d at 735; *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). A civil rights action containing both exhausted and unexhausted claims must be dismissed for lack of total exhaustion. *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

However, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown*, 139 F.3d at 1103. Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court may also dismiss the action on that basis.

III.     Failure to State a Claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that he was classified to administrative segregation in violation of his due process rights. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Hewitt*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the conditions of segregation at issue in that case did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484; *but see Wilkinson v. Austin*, 125 S.Ct. 2384, 2394-95 (2005) (placement in state "supermax" facility sufficiently atypical to implicate due process under *Sandin*).

The Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). In this case, Plaintiff fails to allege how his placement in administrative segregation at ECF imposes an atypical and significant hardship. In the absence of a protected liberty interest, Plaintiff cannot state a claim for violation of due process rights. Moreover, Plaintiff received notice and a hearing, which was upheld by a classification committee, before he was reclassified to administrative segregation. Plaintiff, therefore, received certain procedural due process protections in connection with his placement.

IV. **Motion to Withdraw Complaint**

Plaintiff was granted leave to proceed *in forma pauperis* by the Court (docket #3). Under the PLRA, prisoners proceeding *in forma pauperis* are required to pay the filing fee in installments pursuant to 28 U.S.C. § 1915(b)(1). On February 23, 2006, the Court received a letter from Plaintiff seeking to withdraw his complaint because he does not wish to pay the filing fee in installments (docket #4). It appears that he would prefer to refile his complaint when he has sufficient funds to pay the filing fee. However, the $250.00 filing fee is incurred at the time the complaint is filed. *See In re Alea*, 286 F3d 378, 380-81 (6th Cir. 2002). As a result, Plaintiff would

remain liable for the filing fee even if he were to withdraw his complaint. *Id.* The Court, therefore, will deny his motion to withdraw the complaint.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: MAR -9 2006

Gordon J. Quist
United Stated District Judge